# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JARED REYNOLDS, individually and for all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:16-cv-9871** |
| **v.** | ) ) | **Judge Virginia M. Kendall** |
| **AXIOM GLOBAL, INC., a/k/a AXIOM LAW** | ) ) ) | **Magistrate Judge Sidney I. Schenkier** |
| **Defendants.** | ) ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

Ryan F. Stephan
Catherine T. Mitchell
Haley R. Jenkins
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 (fax)
lawyers@stephanzouras.com

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND..........................................2

      A.     Procedural History ...................................................................2

      B.     Discovery Completed...............................................................3

      C.     Settlement Negotiations ...........................................................4

II.     SUMMARY OF THE SETTLEMENT TERMS ...............................................4

      A.     The Settlement Amount ...........................................................4

      B.     Eligible Class Members ...........................................................5

      C.     Releases...................................................................................5

      D.     Allocation Formula .................................................................6

      E.     Service Payments to Named Plaintiff and Deposed Opt-In Plaintiffs ...................7

      F.     Attorneys' Fees and Litigation Costs......................................7

      G.     Settlement Administrator ........................................................7

III.     CLASS ACTION SETTLEMENT PROCEDURE .........................................8

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...............11

      A.     The Settlement Is Fair, Reasonable, and Adequate ...............13

           1.     The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor)..............................15

           2.     Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor)........................................................................20

           3.     The Reaction of the Class Has Been Positive (Third Factor). ...................21

           4.     Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor). ........................................................................21

       5.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor)............................................22

   B.     The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion..............................................................................22

V.    THE CLASS NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE..................................................................................23

VI.   PRELIMINARY APPROVAL OF CLASS COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE ........................................................25

CONCLUSION.................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 Civ 2898, 2012 WL 671727 (N.D. Ill. Feb. 28, 2012)..........................................11

*Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) .........................................................................12, 15, 21, 23

*Butler v. Am. Cable & Tel., LLC*,
    No. 09 cv 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011).....................................14, 15

*Campbell Advantage Sales & Mktg. LLC*,
    No. 09 cv 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) .......................................25

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996)........................................................................................23

*Cook v. McCarron*,
    92 C 7042, 1997 WL 47448 (N.D. Ill. Jan. 30, 1997) ....................................................12

*Curtiss-Wright Corporation v. Helfand*,
    687 F.2d 171 (7th Cir. 1982) .........................................................................................18

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) .........................................................................................20

*EEOC v. Hiram Walker & Sons, Inc.*,
    768 F.2d 884 (7th Cir. 1985) .............................................................................15, 16, 17

*Elwell v. Univ. Hosp. Home Care Servs.*,
    276 F.3d 832 (6th Cir. 2002) .........................................................................................16

*Equity Funding Corp. of America Securities Litigation*,
    603 F.2d 1353 (9th Cir. 1979) .......................................................................................18

*Florin v. Nationsbank of Ga., N.A.*,
    24 F.3d 560 (7th Cir. 1994) ...........................................................................................25

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ...................................................................................13, 21

*Hispanics United of DuPage City v. Vill. Of Addison, Ill.*,
    988 F. Supp. 1130 (N.D. Ill. 1997) ...............................................................................14

*In re "Agent Orange" Product Liability Litigation*,
    818 F.2d 179 (2d Cir. 1987)......................................................................17

*In re Aon Corp. Wage & Hour Employment Practices Litig.*,
    No. 08 Civ 5802, 2011 WL 248448 (N.D. Ill. Jan. 26, 2011) .........................................17

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)...........................................................12, 21

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722 (3d Cir. 2001).......................................................................26

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 330 (N.D. Ohio 2001) ............................................................13

*In re Prudential*,
    148 F.3d 283, 333 (3d Cir. 1998)............................................................26

*In re Traffic Exec. Ass'n-E. R.R.*,
    627 F.2d 631 (2d Cir. 1980)......................................................................13

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ...............................................11, 14, 15, 21, 23

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
    Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ...................12

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
    834 F.2d 677 (7th Cir. 1987) ...................................................................17

*Matter of Continental Illinois Securities Litigation*,
    962 F.2d 566 (7th Cir. 1992) ("*Continental Illinois I*"), later proceeding, 985 F.2d 867
    (7th Cir. 1993) ("*Continental Illinois II*")..................................................25

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    762 F.2d 1093 (D.C. Cir. 1985)................................................................11

*O'Brien v. Encotech Const. Servs., Inc.*,
    183 F. Supp. 2d 1047 (N.D. Ill. 2002) .......................................................14

*Patterson v. Stovall*,
    528 F.2d 108 (7th Cir. 1976) ...............................................................11, 15

*Redman v. RadioShack Corp.*,
    763 F.3d 622 (7th Cir. 2014) ...................................................................25

*Resurrection v. Shannon,*
    2013 IL App (1st) 111605 ................................................................................................2

*Reynolds v. Beneficial Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002) ......................................................................................20

*Rindfleisch v. Gentiva Health Servs., Inc.,*
    962 F. Supp. 2d 1310 (N.D. Ga. 2013) .......................................................................16

*Rubenstein v. Republic Nat'l Life Ins. Co.,*
    74 F.R.D. 337 (N.D. Tex. 1976) .................................................................................21

*Seiden v. Nicholson,*
    72 F.R.D. 201 (N.D. Ill. 1976) ...................................................................................20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 747 (7th Cir. 2006) ...............................................................................13, 14

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,*
    No. 02-CV-1109-DRH, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) .............................25

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.,*
    309 F.3d 978 (7th Cir. 2002) ......................................................................................11

*Urnikis-Negro v. Am. Family Prop. Servs.,*
    616 F.3d 665 (7th Cir. 2010) ......................................................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005) .........................................................................................26

*West Virginia v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970) ..............................................................................16

*Wong v. Accretive Health, Inc.,*
    773 F.3d 859 (7th Cir. 2014) ......................................................................................25

**Statutes**

Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ........................................... *passim*

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Fed. R. Civ. P. 54 ...........................................................................................................7

Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ......................................... *passim*

**Other Authorities**

5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1] (3d ed. 2001) ...................................26

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §§ 11.22, *et seq.* (4th ed. 2002) .......................................................................................8, 11, 12, 13, 23

Manual for Complex Litigation § 30.41 (3d ed. 2000) .........................................................12, 13

**INTRODUCTION**

Plaintiff Jared Reynolds ("Named Plaintiff"), individually and on behalf of similarly situated individuals (collectively "Plaintiffs"), alleges that Defendant Axiom Global Inc. ("Axiom" or "Defendant") misclassified Plaintiffs as exempt from overtime pay and failed to compensate them for all hours worked in excess of 40 hours per work week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. Plaintiffs and Defendant (the "Parties") have agreed to settle this hybrid class and collective action for the significant monetary relief of approximately Three Hundred and Twenty-Four Thousand, Eighty Dollars ($324,080.00).[1]

The Court should preliminarily approve the Settlement because it is fair, reasonable, and adequate under the governing legal standards and provides reasonable monetary compensation to the Class Members. The Plaintiffs respectfully request the Court: (1) grant preliminary approval of the proposed Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1, and plan of settlement administration therein; (2) approve the proposed Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice"), Claim and Opt-Out Forms, attached to the Settlement Agreement as Exhibits A, and B; (3) authorize mailing of the Class Notice in a manner consistent with the Settlement Agreement; (4) schedule a final approval hearing approximately 100 days after the date of preliminary approval; and, (5) enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement and Granting Approval of FLSA Settlement, attached as Exhibit 2 and filed contemporaneously herewith.

---

[1] As discussed below, the Settlement is divided into two funds: a claims-made fund (the "Claiming Class Member Fund") and a Rule 23 fund (the "Non-Claimant Class Member Fund"). The Claiming Class Member Fund consists of a fixed amount of $275,000.00. The Non-Claiming Class Member Fund will fluctuate depending on the amount of Class Members that participate in the fund. The Parties estimate, based on a 40% claims-made participation rate, that it will amount to approximately $49,080.00.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

On October 20, 2016, Named Plaintiff Jared Reynolds filed the above-captioned class and collective action. (D.E. 1). Plaintiff alleged that he and other Contract Reviewers who reviewed documents for pre-designated contractual language were misclassified by Axiom as exempt from the overtime requirements of the FLSA and IMWL. Plaintiff alleged that Axiom's pay scheme, which compensated all Contract Reviewers on an hourly basis, failed to meet the salary or fee basis tests under the FLSA and, therefore, failed to satisfy the requirements of the professional employee exemption.[2] As a result, Plaintiff alleges Contract Reviewers were deprived of overtime wages in violation of federal and state wage law.

Plaintiff sought to represent himself and similarly situated Contract Reviewers as a collective action under the FLSA and a class action under Illinois state law and Federal Rule of Civil Procedure 23. Shortly after filing the Complaint, four individuals timely filed opt-in consent forms to join the FLSA collective action ("Pre-Settlement Opt-In Plaintiffs").

Defendant has denied and continues to deny any liability, wrongdoing, or violation of any law whatsoever associated with any of the facts or claims alleged in this lawsuit and makes no concession or admission of wrongdoing or liability of any kind. Defendant maintains that all Contract Reviewers were, and always have been, properly classified as exempt employees and that no overtime of any kind is owed to them. Nonetheless, Defendant agreed to settle the claims asserted in this Lawsuit on the terms and conditions set forth in this Settlement Agreement to avoid the burden and expense of litigation.

### B. Discovery Completed

---

[2] The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g., Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

The Parties have conducted extensive discovery including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories, including interrogatories to three of the Pre-Settlement Opt-In Plaintiffs; (c) the exchange of written discovery, including production of electronically stored information ("ESI") in the form of data from the OpenAir timekeeping software; and (d) the review of Defendant's written policies and procedures. Declaration of Ryan F. Stephan ("Stephan Decl.") ¶ 10, attached as Exhibit 3. All discovery was conducted in conjunction with a comprehensive investigation by Plaintiffs' counsel on the applicable law as applied to the facts discovered regarding the alleged claims and defenses.

### C.    Settlement Negotiations

On January 30, 2017, the Parties participated in an all-day mediation session overseen by a nationally recognized wage and hour mediator, Mr. Michael J. Leech, Esq. Stephan Decl. ¶ 11. As a result, the Parties reached an agreement on the settlement amount. *Id.* The terms of the settlement have since been memorialized in the Settlement Agreement. *Id* at ¶12. This settlement includes approximately 409 Class Members, including the Named Plaintiff and three (3) eligible Pre-Settlement Opt-in Plaintiffs, defined as all individuals employed by Axiom Global Inc., as Full Time Contract Reviewers who were paid on an hourly basis from October 20, 2013 through January 30, 2017. Settlement Agreement ¶ 2; Stephan Decl. ¶ 16.

## II.    SUMMARY OF THE SETTLEMENT TERMS

The terms of the Settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendants. Stephan Decl. ¶ 12.

### A.    The Settlement Amount

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement in the Gross Settlement Amount of

approximately Three Hundred and Twenty-Four Thousand, Eighty Dollars ($324,080.00). Settlement Agreement at 10. The Gross Settlement Amount is made up of two funds: the Claiming Class Member Fund and the Non-Claiming Class Member Fund. The Claiming Class Member Fund covers: (1) all approved attorneys' fees and costs in connection with all of Class Counsel's representation of Named Plaintiff and the members of the collective and class actions, including all attorneys' fees and costs that necessarily will arise in the future in connection with carrying out the terms of this Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement and the notice process; (2) any approved service payment to the Named Plaintiff; and (3) all amounts to be paid to Named Plaintiff, Pre-Settlement Opt-In Plaintiffs, and Class Members who submit valid and timely Claim Forms. The Non-Claiming Class Member Fund covers: all amounts to be paid to Class Members who do not exclude themselves from the settlement but who do not timely submit Claim Forms equal to the lesser of (1) $200.00 or (2) the total amount of potential unpaid overtime owed. *Id.* The Gross Settlement Amount is non-reversionary. If there are any uncashed checks which are sent out as a result of the Settlement, the money remaining will be escheated to the state of the Participating Class Member's last known address *Id.* at 17.

### B. Eligible Class Members

Class Members eligible to receive settlement payments are all individuals employed by Axiom Global Inc., as Full Time Contract Reviewers who were paid on an hourly basis from October 20, 2013 through January 30, 2017 and who worked more than 40 hours in any week without receiving payment for those hours of one and a half times his or her regular rate. Settlement Agreement at 2; Stephan Decl. ¶ 16.

### C. Releases

4

The Settlement Agreement provides that the Class Members who do not exclude themselves from this Settlement will release their state wage and hour claims under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, the Illinois Wage Payment and Collections Act ("IWPCA"), and any other applicable state law. Settlement Agreement at 23-24. Furthermore, the Class Members who do not exclude themselves from this Settlement and who return an executed Claim Form by the deadline provided will, by virtue of receiving a Settlement Payment, release both their claims under state law and the FLSA for unpaid overtime wages arising during the Class Period against Defendant. *Id.*

The settlement also provides that the Named Plaintiff agrees to a General Release of his claims against Defendants in exchange for an enhanced settlement payment as set forth in greater detail below. *Id.* at 22-23.

### D.  <u>Allocation Formula</u>

The computation of the payments to Class Members is based on employee time record and productivity data from the OpenAir software and supplied by Axiom Global Inc. The Gross Settlement Amount will be distributed into two funds and allocated to each Class Member dependent upon whether a Claim Form is submitted. In the first fund ("Claiming Class Member Fund"), Axiom will make a settlement payment to each Class Member based on their individual potential unpaid overtime divided by the potential unpaid overtime of all Class Members who submit a Claim Form. The second fund ("Non-Claiming Class Member Fund") will be allocated for those Class Members who neither opt into nor out of the Settlement by the Objection/Exclusion Deadline in the lesser amount of (i) $200.00 or (ii) the total amount of potential unpaid overtime owed based on the number of hours worked as a Contract Reviewer. Settlement Agreement, exclusive of any penalties or liquidated damages. *Id.* at 3, 10.

5

### E.     Service Payment to Named Plaintiff

Plaintiffs will apply for Court approval, and Axiom will not oppose, distribution of a Service Payment to the Named Plaintiff paid out of the Claiming Class Member Fund, that does not exceed Ten Thousand Dollars ($10,000.00) for the Named Plaintiff. Settlement Agreement at 11.

### F.     Attorneys' Fees and Litigation Costs

Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), along with their Motion for Final Approval of the Settlement, Class Counsel will petition for Court approval of an award of attorneys' fees and costs. Settlement Agreement at 13, 17. Class Counsel will seek, and Axiom Global Inc. will not oppose, an award of attorneys' fees of thirty percent (30%) of the Claiming Class Member Fund, or Ninety-Seven Thousand, Two Hundred Dollars ($97,200.00). *Id.* at 10, 13 The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### G.     Settlement Administrator

The Parties have agreed to retain Dahl Administration as the Settlement Administrator. Settlement Agreement at 18. The Settlement Administrator's fees for administration and distribution of the settlement award will be paid by Defendant as an additional sum separate from the Gross Settlement Amount.


## III.     CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22 *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. With this motion, Plaintiffs request that the Court take the first step—granting preliminary approval of the Settlement Agreement, approving the proposed Class Notice and ordering its distribution.

Plaintiffs respectfully propose that the Court issue an order setting the following schedule ("Preliminary Approval Order"):

1. Within ten (10) business days after the Court issues a Preliminary Approval Order, Defendant shall provide the Settlement Administrator with a list of Class Members, their last known addresses, email addresses, and Social Security Numbers ("Class List"), as well as the estimated settlement payment amounts for each Class Member. Settlement Agreement at 15.

2. Within seven (7) calendar days after receiving the Class List and settlement payment calculations for Class Members, or as soon thereafter as practicable, the Settlement Administrator shall send the Class Notice, Claim, and Opt-Out Forms. The Class Notice describes the nature of the litigation, the terms of the settlement, as well as the Class Members' options with regard to participating in the proposed settlement, objecting to the settlement, or opting out. *See* Settlement Agreement, Ex. A (Class Notice). The settlement documents will be sent, postage pre-paid, via first class mail to the last-known address of each Class Member. Settlement Agreement at 18. The Settlement Administrator will make reasonable efforts to obtain valid, current addresses for Class Members. *Id* at 19. If any settlement documents are returned as undeliverable, the Settlement Administrator will promptly undertake reasonable steps to determine the Class Member's current address and, if an additional address is located, to send the materials to the additional address. *Id.*

3. To receive a Settlement Payment, all Class Members, with the exception of the Named Plaintiff and Pre-Settlement Opt-In Plaintiffs, must either materially complete and execute a Claim Form and submit it to the Settlement Administrator

in order to be a part of the Claiming Class Fund, or fail to exclude themselves from the Settlement and receive payment from the Non-Claiming Class Members Fund. *Id*.[3] To be deemed timely, a Claim Form, an Opt-Out Form, or objection must be received by the Settlement Administrator no later than sixty (60) calendar days from mailing of the Class Notice. *Id* at 19.

4.      A final approval hearing on the fairness and adequacy of the proposed Settlement, Class Counsel's request for attorneys' fees, litigation expenses and administration costs, and the service payments to the Named Plaintiff will be held after the Court preliminarily approves the Settlement, on a date subject to the Court's determination. The Class Notice will advise Class Members of the final approval hearing and their right to object to the settlement. *See* Exhibit A to the Settlement Agreement.

5.      The Parties will file a Motion for Final Approval of Settlement no later than seven (7) days before the Final Approval Hearing, and Class Counsel will file a motion seeking approval of the agreed-upon award of attorneys' fees and costs relating to their representation of Named Plaintiff, Pre-Settlement Opt-In Plaintiffs and Class Members. Settlement Agreement at 16.

6.      After the Final Approval Hearing, if the Court grants the Parties' Motion for Final Approval of Settlement, the Court will issue a Final Approval Order and Final Judgment. *Id.* at 25. The "Effective Date" of the settlement will be the date of the Final Order, or if an objection has been filed, the first date after the Final Order by the Court finally approving this Agreement is no longer appealable, or if an appeal has been filed, the date on which the appeal is final. *Id* at 2.

7.      The Settlement Administrator will disburse the settlement checks to the participating Class Members and will pay attorneys' fees and costs to Class Counsel within fourteen (14) calendar days after the Effective Date or fourteen (14) days after funds are deposited into the Settlement Account. *Id.* at 17.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing notice, submitting a claim form, opting out of the settlement and submitting objections to the proposed Settlement will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with

---

[3] The four Pre-Settlement Opt-In Plaintiffs each signed a consent form which provides Named Plaintiff and Class Counsel with the authority to settle the matter on their behalf. All Pre-Settlement Opt-in Plaintiffs have affirmatively chosen Class Counsel as their attorneys. Thus, consistent with all FLSA collective action settlements, the Pre-Settlement Opt-In Plaintiffs will be notified of the settlement directly by Class Counsel, their chosen counsel of record.

an approximate timeline of the various steps in the settlement approval process under the Settlement.

| | Event | Timing |
|---|---|---|
| 1. | Motion for Preliminary Approval Filed | March 20, 2017 |
| 2. | Hearing on Motion for Preliminary Approval | March 28, 2017 |
| 3. | Defendant to Provide Class List and Estimated Payment Amounts to Settlement Administrator | Within 10 Business Days After Preliminary Approval |
| 4. | Settlement Administrator to Issue Class Notice | Within 7 Days After Receiving Class List |
| 4. | Deadline for submitting Claim Forms, Opt-Out Form, or Objecting to Settlement | 60 Days After the Issuance of Class Notice by the Settlement Administrator |
| 5. | Final Approval Hearing | Approximately 100 Days After Preliminary Approval |
| 6. | Effective Date | The date of the Final Order, or if an objection has been filed, the first date after the Final Order by the Court finally approving this Agreement is no longer appealable, or if an appeal has been filed, the date on which the appeal is final. |
| 7. | Defendant to Fund the Settlement Payment Amount | $275,000.00 plus the amount payable to Non-Claiming Class Members no later than 7 days after Effective Date. |
| 8. | Settlement Administrator to Distribute Funds to Class Members | Within 14 Days After Effective Date or fourteen (14) days after Defendant fully funds the Settlement Amount. |

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198-99); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually

refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at \*10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). The decision to approve a proposed settlement is committed to the Court's sound discretion. *See, e.g.*, *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual for Complex Litigation (3d ed.) § 30.41, at 236 (1995). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

At the preliminary approval stage, the Court's task is merely to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible

10

approval," the court should permit notice of the settlement to be sent to class members) (citations omitted). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Cook v. McCarron*, 92 C 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) (citing *Armstrong*, 616 F.2d at 314). Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id*.

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 cv 5944, 07 cv 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). In considering whether to grant preliminary approval of a proposed settlement agreement, the Court utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . . .

Manual for Complex Litigation § 30.41 at 265 (3d ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (a court need only find that there is "probable cause to submit

the [settlement] proposal to class members and hold a full-scale hearing as to its fairness")
(internal quotation omitted). After preliminary approval, the second step of the approval process
is the final determination, following a hearing at which time any objections by class members
may be considered. The Court then determines whether the settlement is fair, reasonable and
adequate from the standpoint of the class; *Newberg* § 11.41.

### A. The Settlement Is Fair, Reasonable, and Adequate

A court generally will preliminarily approve a proposed class settlement if it is "fair,
reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel Techs., Inc. v. DHL Express
(USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Although the Court's task on a motion for
preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine
whether the settlement falls within the range of possible final approval, or "the range of
reasonableness," *Id*. at § 11.26, it is useful to consider the criteria on which the Court will
ultimately judge the settlement.

In making these determinations, courts consider five factors: (1) the strength of the
plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity,
length and expense of continued litigation; (3) the amount of opposition to settlement among
affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and
the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. Further, a
court must view the settlement in its entirety, rather than focus on an individual component. *Isby*,
75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result
of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
988 F. Supp. 1130, 1150 (N.D. Ill. 1997). All of these factors weigh in favor of approval of the
Settlement Agreement and preliminary approval.

"A court's review of FLSA settlements requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 cv 5336, 2011 WL 4729789, at \*9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Similarly, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor). When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789, at \*9 n.9 (citations omitted).

1.    **The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).**

Axiom has agreed to settle this case for an estimated amount of $324,080.00 for a class of approximately 409 Contract Reviewers. Stephan Decl. ¶¶ 13, 16. The settlement amount, therefore, represents significant value for the Claiming Class Members—an average amount of over $1,680 per claiming Contract Reviewer if 40% timely file claims ($1,025.67 per claiming Contract Reviewer, net of anticipated attorneys' fees, litigation costs, and service payments) — particularly given the attendant risks of litigating the merits of the case and any appeals to decisions on those matters. Settlement Agreement at 11.

13

In evaluating the strength of the plaintiffs' case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendants' defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendants' pay scheme fails to meet the salary or fee basis tests under the FLSA. Thus, as in any complex action, the Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

Here, the Settlement provides far more than "a fraction of the potential recovery." Though not providing a maximum value that conceivably might be awarded at trial at a later date, assuming Plaintiffs overcame Defendant's anticipated decertification and summary judgment motions, the Settlement provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corporation v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Securities Litigation*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation method, the Parties considered, among other things, the data obtained via discovery as well as the possibility for liquidated and other damages under the FLSA and IMWL. Stephan Decl. ¶ 14. To determine an equitable distribution among competing claimants in the Claiming Class Member Fund, the allocation formula accounts for the facts that

(1) Contract Reviewers' had fluctuating project deadlines and demands which meant that they did not work the same amount of overtime every week and that there were weeks when they did not work any overtime at all; (2) Contract Reviewers recorded the time they worked in OpenAir as required by Axiom Global Inc.; and (3) Contract Reviewers' timely submission of a Claim Form. *Id*. at ¶ 15. Accordingly, based on Class Counsel's investigation and belief that Contract Reviewers reasonably incur overtime when their workload volumes increased beyond the normal workload for a standard 40-hour work week, Class Counsel used data regarding amounts paid for services rendered, hours worked, and hourly rates paid to Class Members to perform a detailed damages analysis. Settlement Agreement at 7. Based off of this data, a formula was created to determine the proportional share of the Settlement of a Claiming Class Member by dividing his or her potential unpaid overtime by the potential unpaid overtime of all Claiming Class members. *Id* at 12. In addition, any Class Member who does not exclude himself or herself from the settlement but does not timely submit a Claim Form will receive a payment equal to the lesser of (i) $200.00 or (ii) the total amount of potential unpaid overtime owed to the Non-Claiming Class Member paid from the corresponding fund. *Id* at 10. Additionally, for having the courage to assume the duties of a named plaintiff as a young practicing attorney and in exchange for a General Release of all claims against Axiom, the Named Plaintiff will receive an additional Ten Thousand Dollars ($10,000.00) to his payment amount calculated under the allocation method of the Claiming Class Member Fund. *Id* at 13. Finally, any unclaimed funds will escheat to the state of the Class Member's last known address if unclaimed by the close of the check cashing deadline 150 calendar days after the Settlement Administrator makes the initial Settlement Payments by U.S. mail to Class Members. *Id* at 1, 17.

The proposed Settlement thus ensures that the Class Members will receive significant monetary relief, and those Class Members who submit claims will receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

## 2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

Here, further litigation would certainly result in fully briefed motions for conditional and class certification, decertification, and summary judgment on liability and the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in

terms of both time and money but would not reduce the risks that litigation holds for the Class. *See Isby*, 75 F.3d at 1199. The proposed Settlement, on the other hand, provides immediate benefits.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of preliminary approval.

### 3.    The Reaction of the Class Has Been Positive (Third Factor).

Because the Parties have not yet sent the Class Notice, it is premature to fully assess this factor. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 349. However, the Named Plaintiff supports the settlement, as does Class Counsel and Defendants and their counsel. At this preliminary stage, Class Counsel is unaware of any opposition to the settlement. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to object.

### 4.    Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Further, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200.

Class Counsel are competent and experienced in class actions, particularly wage and hour class actions of this kind, and are intimately familiar with the strengths and weaknesses of the claims and defenses. *See* Stephan Decl. ¶¶ 6-7, 17. Using that litigation experience and their

intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the Settlement reached. *Id.* ¶ 17.

Defendants' counsel also endorse this settlement. This factor, therefore, weighs in favor of preliminary approval.

> ### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex hybrid class and collective action was resolved approximately three months after it was initiated. This period involved extensive discovery, including research, analysis, investigation, the exchange of written discovery, including interrogatories to three of the pre-settlement Opt-In Plaintiffs, and production of ESI from the OpenAir timekeeping software. *See* Stephan Decl. ¶ 10. Given the time and resources spent by the Parties in discovery and advancing the lawsuit, this factor favors preliminary approval.

The factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

> ### B. The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion.

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a nationally recognized wage and hour mediator, Mr. Michael J. Leech, Esq. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041,

1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached

during extensive arm's-length negotiations by experienced counsel after thorough investigation,

discovery, analysis, and motion practice. Therefore, this Court should find that an initial

presumption of fairness exists to support preliminary approval of the Settlement.

In sum, the Settlement, on its face, is fair, reasonable, and adequate, and not the product

of collusion. *See Isby*, 75 F.3d at 1198, 1200. In addition, "the proposed settlement is 'within the

range of possible approval'" and should be submitted to the Class Members for their

consideration. *Armstrong*, 616 F.2d at 314. The Court should grant preliminary approval.

## V. THE CLASS NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the proposed Class Notice, which is attached to the Settlement Agreement

as Exhibit A, fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant

to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The detailed information in the proposed Class Notice far exceeds this bare minimum and

fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Class Notice will be mailed by the Settlement Administrator to the last known address of each Class Member within seven (7) days of receiving the Class List from Class Counsel. Settlement Agreement at 16. The Settlement Administrator must take reasonable steps to obtain the correct addresses of any Class Member whose Class Notice is returned as undeliverable and must attempt re-mailing. *Id* at 19. As discussed above, the proposed Class Notice contains information about how to exclude oneself (for those Class Members who did not previously receive an opportunity to opt out) or object to the Settlement. Settlement Agreement Ex. A (Class Notice). Class Members will have sixty (60) days from the mailing of the Class Notice to the Class Member to submit a Claim Form, to withdraw a previous opt out or opt out (as applicable), or to comment on or object to the Settlement. Settlement Agreement ¶¶ 16, 19, Ex. A (Class Notice).

The Class Notice further explains that after the Settlement Agreement receives final approval and after any appeals, Class Members who have either timely submitted a Claim Form or excluded themselves from the Settlement will receive a settlement check from one of the two established funds and will have waived their state wage and hour claims. Settlement Agreement, Ex. A (Class Notice). The Notice further explains that by timely submitting a Claim Form, Class Members will signal their consent to join the FLSA collective action and will release their federal law wage and hour claims as well. *Id* at 22.

## VI.     PRELIMINARY APPROVAL OF CLASS COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class litigation is as a percentage of the common fund. *See Matter of Continental Illinois Securities Litigation,* 962 F.2d 566, 572-74 (7th Cir. 1992) ("*Continental Illinois I*"), later proceeding, 985 F.2d 867 (7th Cir. 1993) ("*Continental Illinois II*"). To determine what

percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from $33^1/_3$% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02-CV-1109-DRH, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method (*see Florin v. Nationsbank of Ga., N.A.*, 24 F.3d 560, 565-66 (7th Cir. 1994))—the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (approving award of 30% of the settlement proceeds, plus expenses); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 cv 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit recently cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 763 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys").[4]

Accordingly, Class Counsel requests that the Court grant preliminary approval of an award of $97,200.00, which represents 30% of the Claiming Class Member Fund plus costs.

## CONCLUSION

While Plaintiffs believe the Settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the

---

[4] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("the trend in this circuit is toward the percentage method"); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund" (citing *In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998)) (internal quotation marks omitted).

Settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the Settlement, the benefits to be received by Class Members, and Class Counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-336 (3d ed. 2001).

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement and enter the Proposed Order, attached as Exhibit 2.

Dated: March 21, 2017                              Respectfully Submitted,

                                                   */s/ Ryan F. Stephan*
                                                   Ryan F. Stephan
                                                   Catherine T. Mitchell
                                                   Haley R. Jenkins
                                                   Stephan Zouras, LLP
                                                   205 North Michigan Avenue
                                                   Suite 2560
                                                   Chicago, IL 60601
                                                   312.233.1550
                                                   312.233.1560 (fax)
                                                   rstephan@stephanzouras.com
                                                   cmitchell@stephanzouras.com
                                                   hjenkins@stephanzouras.com

                                                   **ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I, the attorney, hereby certify that on March 21, 2017, I electronically filed the attached

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION

SETTLEMNT AND APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT with the

Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*