**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JARED REYNOLDS, individually and for all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:16-cv-9871** |
| **v.** | ) ) | **Judge Virginia M. Kendall** |
| **AXIOM GLOBAL, INC., a/k/a AXIOM LAW** | ) ) ) | **Magistrate Judge Sidney I. Schenkier** |
| **Defendants.** | ) | |

**THE PARTIES' JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

ATTORNEYS FOR PLAINTIFFS:

Ryan F. Stephan
Catherine T. Mitchell
Haley R. Jenkins
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 (fax)
lawyers@stephanzouras.com

ATTORNEYS FOR DEFENDANTS:

Darren Mason Mungerson
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1000
Chicago, Illinois 60654
312.372-5520
dmungerson@littler.com

i

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

I.      FACTUAL AND PROCEDURAL BACKGROUND.........................................2

II.     SUMMARY OF THE SETTLEMENT TERMS .................................................3

        A.      The Settlement Fund .................................................................................3

        B.      Eligible Class Members ............................................................................4

        C.      Releases.....................................................................................................5

        D.      Allocation Formula ...................................................................................5

        E.      Service Payments, Attorneys' Fees, and Litigation Costs ........................6

        F.      Settlement Administration ........................................................................7

        G.      Objections and Opt-Outs...........................................................................8

III.    THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS
        OF RULE 23 ......................................................................................................8

IV.     THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS
        A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE
        OVER PLAINTIFFS' FLSA AND IMWL CLAIMS .........................................8

        A.      The Settlement Is Fair, Reasonable, and Adequate ..................................9

                1.      The Settlement Amount Is Substantial Given the Strengths of
                        Plaintiffs' Claims and Attendant Risks (First Factor)...................10

                2.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (Second Factor).............................................................................12

                3.      The Reaction of the Class Has Been Positive (Third Factor) .........14

                4.      Competent Counsel for Both Parties Endorse this Agreement
                        (Fourth Factor)...............................................................................14

                5.      Discovery Has Advanced Far Enough to Allow the Parties to
                        Resolve the Case Responsibly (Fifth Factor).................................15

        B.      Approval of the Release of The Class Federal and State Wage and
                Hour Claims is Appropriate ........................................................................15

CONCLUSION....................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ..................................................................................................................... 8, 10

*Armstrong v. Bd. Of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980) ............................ 12, 14

*Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159 (7th Cir. 1988) ......................................... 14

*Butler v. Am. Cable & Tel., LLC*, No. 09 cv 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) . 16, 17

*Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 11

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996) ............................... 16

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985) .................................................... 13

*EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir. 1985) ................................ 9, 10, 11, 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .......................................................................... 8

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ......................................................................... 9

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ............................................................................... 9

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ................................................................... 10, 14

*Gehrich v. Chase Bank United States*, 316 F.R.D. 215 (N.D. Ill. 2016) .......................................... 11

*Hispanics United of DuPage County v. Village of Addison, Ill.*, 988 F. Supp. 1130, 1166 (N.D. Ill. 1997) ......................................................................................................................... 14

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). .......................................................................... 12

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) ............... 13

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ................................... 12

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) .......................................................................... 9, 11, 14

*Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) ....................................................... 14

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987)..................11

*Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) ......................................................10, 12, 14

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004)......................................................9

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30 (1st Cir.) .........................................................................................................................................16

*O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047 (N.D. Ill. 2002) ...........................16

*Patterson v. Stovall*, 528 F.2d 108 (7th Cir. 1976) ...............................................................9

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014).......................................................14

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002); ....................................13

*Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014)........17

*Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337 (N.D. Tex. 1976) ..................................13

*Seiden v. Nicholson*, 72 F.R.D. 201 (N.D. Ill. 1976) ...............................................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006)........................10, 14

*Uhl v. Thoroughbred Tech. & Telecommns.*, 309 F.3d 978 (7th Cir. 2002).......................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ...........................................8, 9

*Williams v. Quinn*, 748 F. Supp. 2d 892 (N.D. Ill. 2010) ................................................................11

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* .....................................................................passim

Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ................................................................passim

**Other Authorities**

Alba Conte, Herbert B. Newberg, *Newberg on Class Action* § 11.41 (4th ed.) ...........................9, 16

**Rules**

Rule 23 ...................................................................................................................................9, 15, 16

Rule 23(c)(2)(B) ........................................................................................................................... 8

Rule 23(e) ................................................................................................................................. 8, 9

Rule 26(a) ...................................................................................................................................... 2

## **INTRODUCTION**

Plaintiff Jared Reynolds ("Named Plaintiff"), individually and on behalf of a class of individuals certified for settlement purposes (collectively, "Plaintiffs"), and Defendant Axiom Global Inc. ("Axiom" or "Defendant") (together with Plaintiffs, the "Parties"), by and through their undersigned counsel, move for final approval of the Parties' settlement of Plaintiffs' claims of misclassification and unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. The Parties' settlement of this hybrid FLSA collective action and IMWL Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant final approval of the Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached hereto as Exhibit A, including the releases of claims as set forth in the Settlement Agreement; and (2) enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.

On March 22, 2017, the Court took the first step in the settlement approval process by preliminarily approving the Parties' Class and Collective Action Settlement; approving Dahl Administration ("Dahl" or "Settlement Administrator") as Settlement Administrator; directing that notice be mailed to the Class Members; and setting a date for the Final Approval Hearing. (D.E. 26, 27).

Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation formula, and their right to participate in, object to, or opt out of the settlement. Ex. C (Affidavit of Kelly Kratz ("Kratz Aff.")) ¶ 6. To date, no Class Members have objected to the settlement, and only three (3) individuals opted out of the settlement. Kratz Aff. ¶¶ 10-11; Ex. D

(Declaration of Ryan F. Stephan ("Stephan Decl.")) ¶ 8. With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As set forth in greater detail in the Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement ("Preliminary Approval Motion") (D.E. 23), Named Plaintiff Jared Reynolds filed the above-captioned class and collective action on October 20, 2016, alleging that he and other Contract Reviewers who reviewed documents for pre-designated contractual language were misclassified by Axiom as exempt from the overtime requirements of the FLSA and IMWL and wrongfully deprived of overtime compensation. (D.E. 1).

Plaintiff sought to represent himself and similarly situated Contract Reviewers in a collective action under the FLSA and a class action under the IMWL and Rule 23. Shortly after filing the Complaint, four individuals timely filed op-in consent forms to join the FLSA collective action ("Pre-Settlement Opt-In Plaintiffs"). (D.E. 6, 10, 20).

The Parties conducted extensive discovery including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories, including interrogatories to three of the Pre-Settlement Opt-In Plaintiffs; (c) the exchange of written discovery, including production of electronically stored information ("ESI") in the form of data from the OpenAir timekeeping software; and (d) the review of Defendant's written policies and procedures. Stephan Decl. ¶ 12. All discovery was conducted in conjunction with a comprehensive investigation by counsel on the applicable law as applied to the facts discovered regarding the alleged claims and defenses.

On January 30, 2017, the Parties participated in an all-day mediation session overseen by a nationally recognized wage and hour mediator, Mr. Michael J. Leech, Esq. Stephan Decl. ¶ 7. As a result, the Parties reached an agreement on the settlement amount. *Id.* The Terms of the settlement

have since been memorialized in the Settlement Agreement, fully executed on March 16, 2017. *Id.* Including the Named Plaintiff and eligible Pre-Settlement Opt-in Plaintiffs, this settlement includes approximately 408 Class Members, which are defined as all individuals employed by Axiom Global, as Full Time Contract Reviewers who were paid on an hourly basis from October 20, 2013 through January 30, 2017. Kratz Aff. ¶ 4; Settlement Agreement at 3; Stephan Decl. ¶ 8.

On March 21, 2017, Plaintiffs filed a Motion for Preliminary Approval requesting, among other relief, that the Court grant preliminary approval of the Settlement Agreement. (D.E. 23). On March 22, 2017, the Court granted preliminary approval of the Parties' proposed settlement, approved Dahl as Settlement Administrator, and directed that notice be mailed ("Preliminary Approval Order"). (D.E. 26). On March 23, 2017, the Court amended the Preliminary Approval Order, and set a revised date for a final approval hearing ("Amended Preliminary Approval Order"). (D.E. 27).

## II.     SUMMARY OF THE SETTLEMENT TERMS

The terms of the settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendant. Stephan Decl. ¶ 14.

### A.     The Settlement Fund

The Settlement Agreement provides that Defendant will pay the Gross Settlement Amount of $310,057.61 as consideration for Class Members' promises and releases in the Settlement Agreement. Kratz Aff. ¶ 13; Settlement Agreement at 9. This Gross Settlement Amount has two components: the "Claiming Class Member Fund" and "Non-Claiming Class Member Payments." Settlement Agreement at 10. The Claiming Class Member Fund consists of a $275,000.00 payment, which covers: (1) all approved attorneys' fees and costs in connection with all of Class Counsel's representation of Named Plaintiff and the members of the collective and class actions, including all attorneys' fees and costs that necessarily will arise in the future in connection with carrying out the

terms of this Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement and the notice process; (2) any approved service payment to the Named Plaintiff; and (3) all amounts to be paid to Named Plaintiff, Pre-Settlement Opt-In Plaintiffs, and Class Members who submit valid and timely Claim Forms. *Id.* at 5, 10. Claiming Class Members will receive payment equal to a pro-rata share of the Claiming Class Member Fund. *Id*. The Non-Claiming Class Member Payments cover: all amounts to be paid to Class Members who did not exclude themselves from the settlement but who did not timely submit Claim Forms. Non-Claiming Class Members will receive payment equal to either the lesser of (1) $200.00 or (2) the total amount of potential unpaid overtime owed. *Id.* at 10.

Other than the Defendant's share of payroll taxes, mediator fees, and settlement administration expenses, Defendant will not be required to pay more than the gross total of $310,057.61. Kratz Aff. ¶ 13; Settlement Agreement at 5, 13-14, 19. This Settlement Amount shall fully resolve and satisfy: (1) all attorney's fees and costs approved by the Court in connection with Class Counsel's representation of Named Plaintiff, Opt-In Plaintiffs, and Class Members; (2) all amounts to be paid to the Named Plaintiff, Opt-In Plaintiffs, and Class Members, including Claiming and Non-Claiming Class Members; and (3) all Court-approved service payments to the Named Plaintiff. Settlement Agreement at 5. The Gross Settlement Amount is non-reversionary; if there are any uncashed checks which are sent out as a result of the Settlement, the money remaining will be escheated to the state of the Participating Class Member's last known address. *Id*. at 18.

B.    **Eligible Class Members**

No action was required by Class Members to receive a settlement payment. Settlement Agreement at 10. All individuals employed by Axiom Global, Inc. as a Contract Reviewer, Reviewer, or any similarly titled position during the period of October 20, 2013, to January 30, 2017, who did not opt out of the settlement will receive a payment. *Id.* at 2-3, 10. Claiming Class Members, individuals who timely filed claim forms, will receive a pro-rata share of the Claiming Class Member Fund. *Id.* at 5, 10. Non-Claiming Class members, individuals who neither timely filed claim forms nor opted out of the settlement, will receive payment equal to either the lesser of (1) $200.00 or (2) the total amount of potential unpaid overtime owed. *Id.* at 10.

C. **Releases**

The Settlement Agreement provides that Class Representative Reynolds fully releases and discharges Defendant from any and all claims from the beginning of time through the effective date. Settlement Agreement at 22-23. Class Members who did not exclude themselves from this Settlement release and discharge all state wage law claims relating to allegations that Defendant's pay practices caused Class Members not to be paid all proper wages. *Id.* at 23-24. Additionally, Class Members who returned an executed Claim Form release and discharge all state wage law claims and any Claims under the Fair Labor Standards Act arising during the Class Period. *Id.* at 23-24. Class Members who opted-out are not bound by the Settlement. *Id.* at 24-25.

D. **Allocation Formula**

The computation of the payments to Class Members is based on employee time record and productivity data from the OpenAir software and supplied by Axiom Global Inc. Stephan Decl. ¶ 11. To determine an equitable distribution among competing claimants in the Claiming Class Member Fund, the allocation formula accounts for the facts that (1) Contract Reviewers had fluctuating project deadlines and demands which meant that they did not work the same amount of overtime every week

and that there were weeks when they did not work any overtime at all; (2) Contract Reviewers recorded the time they worked in OpenAir as required by Axiom Global Inc.; and (3) Contract Reviewers timely submitted a Claim Form. *Id*. Accordingly, based on Class Counsel's investigation and belief that Contract Reviewers reasonably incur overtime when their workload volumes increased beyond the normal workload for a standard 40-hour work week, Class Counsel used data regarding amounts paid for services rendered, hours worked, and hourly rates paid to Class Members to perform a detailed damages analysis. Settlement Agreement at 7. The Gross Settlement Amount will be distributed either through the Claiming Class Member Fund or through the Non-Claiming Class Member Payments. Settlement Agreement at 10.

Following the deduction of Plaintiff's Attorneys' Fees and Costs and the Service Award for the Named Plaintiff, the remainder of the Claiming Class Member Fund (the "Net Claiming Class Member Fund"), will be allocated *pro rata* to each Claiming Class Member. *Id.* at 12. The potential overtime for each Claiming Class Member will be added together to determine total potential unpaid overtime. *Id.* Each Claiming Class Member will be assigned a portion of the Net Claiming Class Member Fund, based on a formula dividing their individual potential unpaid overtime by the potential unpaid overtime of all Class Members who submit a Claim Form. *Id.* This calculation does not account for any amounts for liquidated damages or penalties when assessing *pro rata* allocations. *Id.*

Non-Claiming Class Member Payments will be allocated for those Class Members who neither opted into nor out of the Settlement by the Objection/Exclusion Deadline in the lesser amount of (i) $200.00 or (ii) the total amount of potential unpaid overtime owed based on the number of hours worked as a Contract Reviewer. *Id.* at 3, 10. This amount excludes any claims for liquidated damages or attorney's fees. *Id*.

      **E.**     **Service Payments, Attorneys' Fees, and Litigation Costs**

In return for services rendered to Class Members and in addition to his Settlement Payment and as approved by the Court, Named Plaintiff will receive a Service Payment not to exceed Ten Thousand Dollars ($10,000.00). Settlement Agreement at 13. Contemporaneous with this motion, Class Counsel will petition the Court, unopposed, an award of attorneys' fees of thirty percent (30%) of the Claiming Class Member Fund, or Ninety-Seven Thousand, Two Hundred Dollars ($97,200.00). *Id.* at 10, 12. Any additional costs beyond this beyond this amount, including Defendant's own legal fees, expenses, employer payroll taxes, mediator costs, and settlement administration costs, shall be paid by Defendant, and these costs shall not be deducted from the Settlement Fund. *Id.* at 13-14, 19. The parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### F.     <u>Settlement Administration</u>

The Parties selected Dahl Administration, an experienced class action claims administrator, to administer the settlement. Settlement Agreement at 4. The Settlement Administrator's fees for administration and distribution of the settlement award will be paid by the Defendant, as an additional sum separate from the Gross Settlement Amount. *Id.* at 19.

On April 10, 2017, the Settlement Administrator mailed the Notice of Proposed Settlement of Collective Action ("Class Notice"), Claim Form, and Opt-Out Form, (collectively "Notice Materials") to 408 Class Members. Kratz Aff. ¶ 6. After the Notice Materials were mailed, the Settlement Administrator received twenty-two (22) Notice Materials returned by USPS with undeliverable addresses. *Id.* ¶ 8. Through credit bureau and/or other public source databases, the Settlement Administrator performed addresses searches for the undeliverable Notice Materials and

was able to find updated addresses for 15 Class Members. *Id.* The Settlement Administrator promptly re-mailed the Notice Materials to the new addresses. *Id.*

**G.   Claims, Objections, and Opt-Outs**

The deadline to submit a Claim Form or Opt-Out Form was June 9, 2017. This deadline has now passed. Three (3) Class Members requested exclusion from the settlement, and no Class Members objected to the settlement. Kratz Aff. ¶¶ 10-11; Stephan Decl. ¶ 8. A total of 180 Class Members timely submitted Claim Forms, representing a class participation rate of 44.12% of the total 408 Class Members. Kratz Aff. ¶ 12; Stephan Decl. ¶ 8.

**III.   THE PARTIES HAVE SATISFIED THE NOTICE REQUIREMENTS OF RULE 23**

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2)(B). *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. As set forth in Section II.E above, the Parties' and the Settlement Administrator's efforts to effectuate notice by mail to the Class Members meet the requirements of Rule 23(c)(2)(B).

**IV.   THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S FLSA AND IMWL CLAIMS**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-*

8

*Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Uhl v. Thoroughbred Tech. & Telecommns.*, 309 F.3d 978, 986 (7th Cir. 2002) (same); Alba Conte, Herbert B. Newberg, *Newberg on Class Action* § 11.41 (4th ed.) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

    As set forth in detail below, the proposed settlement is fair, reasonable and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of the FLSA and IMWL and thus should be approved.

## A.    The Settlement Is Fair, Reasonable, and Adequate

    To approve a proposed settlement of a class action under Rule 23, a district court's review of a settlement agreement is "limited to whether the settlement is lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecommns.*, 309 F.3d 978, 986 (7th Cir. 2002); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). The court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *see Isby v. Bayh*, 75 F.3d 1191, 1197 (7th Cir. 1996).

    However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v.*

*Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of Plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)); *EEOC*, 768 F.2d at 889.[1] All of these factors weigh in favor of final approval.

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

Axiom has agreed to settle this case for a Gross Settlement Amount of $310,057.61 for a class of 408 Contract Reviewers. Kratz Aff. ¶¶ 4, 13; Stephan Decl. ¶ 8. The Gross Settlement Amount shall fully resolve and satisfy: (1) all attorney's fees and costs approved by the Court in connection with Class Counsel's representation of Named Plaintiff, Opt-In Plaintiffs and Class Members; (2) all amounts to be paid to the Named Plaintiff, Opt-In Plaintiffs, and Class Members; and (3) all Court-approved service payments to the Named Plaintiff. Settlement Agreement 5. The Gross Settlement Amount is non-reversionary; if there are any uncashed checks which are sent out as a result of the Settlement, the money remaining will be escheated to the state of the Participating Class Member's last known address. *Id.* at 18. The settlement payments represent the approximate value of the half-time rate owed to class members. Stephan Decl. ¶ 10. This is a substantial settlement that represents a significant value – after paying attorneys' fees, litigation costs, and service payments, $202,857.61 will be distributed to Class Members, and each Claiming Class member will receive an average

---

[1] The Seventh Circuit has also used six factors when evaluating whether a proposed settlement is fair, reasonable and adequate. *Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016); *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982). The occasionally used additional factor, the reaction of members of the class to the settlement, *Martin*, 818 F.3d at 306, corresponds with the third factor, amount of opposition to the settlement. These two, overlapping factors are discussed under factor three. I*nfra* 14, n. 2.

amount of $951.93 and each Non-Claiming Class member will receive an average amount of $156.51 – particularly given the attendant risks of litigating the merits of the case and any appeals to decisions on those matters. Stephan Decl. ¶¶ 9-10.

This settlement provides much more than "a fraction of the potential recovery." *Cf. Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). The Settlement provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *EEOC*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate"). Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In evaluating the strength of the plaintiffs' case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (noting "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety"). Courts should "refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *EEOC*, 768 F.2d at 889. Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996); *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 228

11

(N.D. Ill. 2016); *see also Armstrong v. Bd. Of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980) (noting that settlement abandons "the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *EEOC*, 768 F.2d at 889 (internal citations omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendants' defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendants' pay scheme fails to meet the salary or fee basis tests under the FLSA. Additionally, Plaintiffs had not yet obtained class certification. (D.E. 16). Thus, as in any complex action, the Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *rev'd on other grounds*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730 (1977). The proposed Settlement thus ensures that the Class Members will receive significant monetary relief, and those Class Members who submitted claims will receive a settlement amount that is reasonable. In light of the substantial recovery this settlement provides and the attendant risks of litigation, this factor therefore weighs in favor of final approval.

      **2.     Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).**

The second factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement. *Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016); *In re*

*Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Although Class Counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money for the class; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also In re AT&T,* 270 F.R.D. at 347; *Donovan*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive class discovery would be required to establish liability and damages. Here, further litigation would certainly result in fully briefed motions for conditional and class certification, decertification, and summary judgment on liability, as well as the risk, time, and expense associated with a complex trial or trials. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of final approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

Courts next evaluate the amount of opposition to the settlement, by weighing the reaction of Class Members[2] *Martin v. Reid*, 818 F.3d 302, 306 (7th Cir. 2016). Nearly half of the Class opted-in to this settlement, with 180 Class Members submitting claim forms, reflecting a 44.12% participation rate in the settlement. Kratz Aff. ¶ 12; Stephan Decl. ¶ 8. The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001); *see also Hispanics United of DuPage County v. Village of Addison, Ill.*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). Here, only three (3) Class Members have requested exclusion from the settlement, and no Class Members objected to the settlement. Kratz Aff. ¶¶ 10-11; Stephan Decl. ¶ 8. Thus, this factor also favors approval of the settlement.

### 4. Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel," *Bash v. Firstmark Standard Life Ins. Co.*, 861 F.2d 159, 162 (7th Cir. 1988) (quoting *Armstrong*, 616 F.2d at 325); *Isby*, 75 F.3d at 1200, although they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. Class Counsel are competent and

---

[2] By considering opposition to the settlement, Courts inherently evaluate the reaction of Class Members, incorporating the optional sixth factor in their analysis of the third factor. *Compare Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982) (assessing both opposition to the settlement and reactions of Class Members), *with Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (weighing opposition to the settlement in its evaluation of a settlement agreement without a separate discussion of Class Member reactions).

experienced in class actions, particularly wage and hour class actions of this kind, and are intimately familiar with the strengths and weaknesses of the claims and defenses. *See* Stephan Decl. ¶¶ 3-5, 13. Class Counsel also are realistic and understand that the resolution of liability issues, the outcome of the trial, the inevitable appeals process, and the ultimate collection risk are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Defendant's counsel also endorses this settlement. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex hybrid class and collective action was resolved approximately three months after it was initiated. This period involved discovery, including research, analysis, investigation, the exchange of written discovery, including interrogatories to three of the pre-settlement Opt-In Plaintiffs, production of hundreds of pages of documents, and review of Defendant's written policies, procedures and agreements. *See* Stephan Decl. ¶ 6. The stage of litigation has advanced to a state that the Parties could fairly and fully evaluate the value of the Settlement – indeed, class-wide merits discovery, Rule 23 class certification, dispositive motion practice, and trial preparation were the immediate tasks at hand. Stephan Decl. ¶¶ 6, 13. Given the amount of time and resources spent by the Parties in discovery and settling the lawsuit, this factor favors final approval.

### B. Approval of The Release of The Class Federal and State Wage and Hour Claims is Appropriate.

The Parties also request that the Court specifically approve the release of Class Members' state wage and hour claims and the release of Claiming-Class Members' state and federal wage and hour claims. Settlement Agreement at 23-24. The Parties request that the Court approve the General Release of claims by Named Plaintiff. *Id.* at 22-23.

"A court's review of FLSA settlements requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 cv 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Similarly, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050-52 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor). When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789, at *9 n.9 (citations omitted).

There is plainly no collusion or fraud with respect to this proposed settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected nationally recognized wage and hour mediator, Mr. Michael J. Leech. Stephan Decl. ¶¶ 7, 14. As a distinguished commentator on class actions has noted: There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *Newberg* §11.41 at 11-88; *see also Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir.) (quoting *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996)). In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, analysis, and motion practice.

Because the Settlement Agreement, including Class Members' releases of the Released Federal Law Claims and Released State Law Claims, as well as Named Plaintiff's General Release, Settlement Agreement 22-25, resolves a bona fide dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011).

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court grant their Joint Motion for Final Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit B.

Dated: July 12, 2017                    Respectfully Submitted,

                                        *s/ Ryan F. Stephan*
                                        Ryan F. Stephan
                                        Catherine T. Mitchell
                                        Haley R. Jenkins
                                        Stephan Zouras, LLP
                                        205 North Michigan Avenue
                                        Suite 2560
                                        Chicago, IL 60601
                                        312.233.1550
                                        312.233.1560 (fax)
                                        lawyers@stephanzouras.com

                                        **ATTORNEYS FOR PLAINTIFFS**


                                        */s/ Darren M. Mungerson*
                                        Darren Mason Mungerson
                                        LITTLER MENDELSON, P.C.
                                        321 North Clark Street
                                        Suite 1000
                                        Chicago, Illinois 60654
                                        312.372-5520
                                        dmungerson@littler.com

                                        **ATTORNEY FOR DEFENDANT**


Firmwide:148742705.1 057394.1015

18

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on July 12, 2017 I electronically filed the attached with the

Clerk of the Court using the ECF system which will send such filing to all attorneys of record.


                */s/ Ryan F. Stephan*