**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JARED REYNOLDS, individually and for all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 1:16-cv-9871** |
| **v.** | ) ) | **Judge Virginia M. Kendall** |
| **AXIOM GLOBAL, INC., a/k/a AXIOM LAW** | ) ) ) | **Magistrate Judge Sidney I. Schenkier** |
| **Defendants.** | ) ) | |

**PLAINTIFFS' UNOPPOSED PETITION FOR APPROVAL OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND
SERVICE PAYMENT TO NAMED PLAINTIFF**

Ryan F. Stephan
Catherine T. Mitchell
Haley R. Jenkins
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
312.233.1560 (fax)
lawyers@stephanzouras.com

i

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

I.    BACKGROUND ...................................................................................................1

    A.    Class Counsel Performed Substantial Work in This Case and Achieved    Significant Results for the Class.................................................................................................1

    B.    Class Counsel and Plaintiff Agreed to a Reasonable Percentage of the Settlement Amount as Compensation for the Risks They Took in Prosecuting This Action and Notified Class Members of this Arrangement Through Class Notice. ........................................................................2

II.    ARGUMENT ........................................................................................................3

    A.    An Award of Fees and Costs Is Mandatory Under the FLSA and IMWL. .......................3

    B.    The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Seventh Circuit. ......................................................................3

    C.    The Market Price for Legal Services Supports Plaintiffs' Motion for Attorneys' Fees. .....6

        1.    Class Counsel's Request for 30% of the Settlement Is at the Low End Range of the Usual Rate of Compensation in the Northern District of Illinois. ....................7

        2.    The Risk of Nonpayment Was Significant. ............................................................9

    D.    Class Counsel's Requested Fee Award Is Fair and Reasonable. ......................................10

        1.    The Results and Benefits Conferred Upon the Class Justify the Fee Award........10

        2.    Continued Litigation Presented A Significant Risk to the Class. .........................11

        3.    There Were No Objections to Class Counsel's Request for Fees.........................11

    E.    Although Class Counsel's Fee Request Is Reasonably Based on the Market and Should Be Approved Without Cross-Checks, It Meets Both Cross-Checks Applied By Courts. ............11

        1.    Although the Court Need Not Perform a Lodestar Cross-Check, Class Counsel's Lodestar Supports the Fee Request.......................................................................12

        2.    Although the Court Need Not Use the "Redman Ratio Test" to Cross-Check the Settlement, Class Counsel's Fee Request Passes this Test. ...................................14

    F.    Class Counsel are Entitled to Reimbursement of Costs and Expenses.............................16

    G.    Named Plaintiff and the Deposed Opt-In Plaintiffs Should Be Awarded Service Payments for their Efforts in this Litigation...............................................................................17

    CONCLUSION....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542 (7th Cir. 2009)...............................3

*Arango v. Landry's, Inc.*, No. 12 C 9354, 2015 WL 5673878 (N.D. Ill. Aug. 27, 2015)...............8

*Bankston v. State of Ill.*, 60 F.3d 1249 (7th Cir. 1995) ...................................................................3

*Batt v. Micro Warehouse Inc.*, 241 F.3d 891 (7th Cir. 2001) ..........................................................3

*Beckman v. KeyBank N.A.*, 293 F.R.D. 467 (S.D.N.Y 2013) ........................................................13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)............................................................................4

*Briggs v. PNC Fin. Servs. Grp.*, No. 1:15-cv-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) .................................................................................................................................................8

*Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010) .......................................8

*Calderon v. Witvoet*, 112 F.3d 275 (7th Cir. 1997) ......................................................................16

*Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ...................................................................................................................................4, 8

*Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) ..........................................................................................................................................7, 9, 17

*Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015)..................................................................................................................................8

*Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872 (7th Cir. 2012)............................................17

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014)......................................................14, 15, 16

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) ..........................................4, 5, 6

*Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998)...........................................................................9

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill 1996) ................................................................5, 6

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...................................................6

*Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .................................................................................................................................. 9

*Grok Lines Inc. v. Paschall Truck Lines, Inc.*, No. 14 C 08033, 2015 WL 5544504 at *22 (N.D. Ill. Sept. 18, 2015) ...................................................................................................... 4

*Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ........................................................................................................................ 18

*Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .......... 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................. 6

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). ...................................................................... 10

*In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ....................................................................................................................................... 5

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) .................................................................................................................................. 6

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) ................................................ 5

*In re Prudential*, 148 F.3d 283 (3d Cir. 1998) ............................................................................ 5

*In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ...................................................... 6, 7

*In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) ......................................................... 5

*In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ..................................................................................................................................... 12

*Joe Hand Promotions, Inc. v. Zani*, No. 11 C 4319, 2014 WL 958716 (N.D. Ill. Mar. 11, 2014) 16

*Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) .............................................................................................................................. 4, 13

*Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ....... 8, 17

*Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)........................................................ 9

*McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ............... 8

*Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003) .................................................. 4

*Puglisi v. TD Bank, N.A.*, No. 13 CIV. 637 GRB, 2015 WL 4608655 (E.D.N.Y. July 30, 2015) 18

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ................................................ passim

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)................................................. 12

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011)......................................... 9

*Skelton v. G.M. Corp.*, 860 F.2d 250 (7th Cir. 1988) ................................................................ 4, 5

*Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702 (7th Cir. 2001)............................. 3

*Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544 (7th Cir. 1999) ................................................ 16

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780 (9th Cir. 2007) ....................................................... 14

*Sutton v. Bernard*, 504 F.3d 688 (7th Cir. 2007) ................................................................... 4, 6, 9

*Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) .................................................................... 6

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ........................................................ 7, 8, 9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................. 4, 13

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)....................... 9

*Will v. General Dynamics Corp.*, No. 06 Civ. 698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)12

*Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011) .................................. 6, 12

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) ...................................................... 4

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ........................................................................................................................ 12

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* .......................................................... 1, 3, 5, 16

Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ......................................................... passim

**Other Authorities**

4 Newberg on Class Actions § 11.38 ........................................................................... 18

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................ 11

Rule 26(a) ................................................................................................................ 2

## INTRODUCTION

Class Counsel, Stephan Zouras, LLP, respectfully move for an award of attorneys' fees of 30% of the $275,000.00 Claiming Class Member Fund. In addition, Class Counsel moves for an award of service payment of no more than $10,000.00 to the Named Plaintiff in recognition of his substantial contribution to the favorable outcome for the class.

Class Counsel's efforts have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved. Ex. A, Declaration of Ryan F. Stephan ("Stephan Decl.") ¶ 14. Class Counsel's cooperative efforts have resolved this action before incurring the expense of an extensive and lengthy class action trial and probable appeals, which has preserved judicial resources and benefitted the class.

## I.      BACKGROUND

### A.      Class Counsel Performed Substantial Work in This Case and Achieved Significant Results for the Class.

In an effort to resolve this litigation expeditiously and achieve advantageous results for Class Members, Class Counsel litigated this case vigorously for several months before reaching a resolution during mediation. Class Counsel filed Plaintiff's collective and class action complaint on October 20, 2016, alleging that Plaintiff and other Contract Reviewers who reviewed documents for pre-designated contractual language were misclassified by Axiom as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and wrongfully deprived of overtime compensation. (D.E. 1). Plaintiff and Defendant ("the Parties") engaged in limited preliminary discovery. Shortly after filing the Complaint, four individuals timely filed op-in consent forms to join the FLSA collective action ("Pre-Settlement Opt-In Plaintiffs"). (D.E. 6, 10, 20).

1

Thereafter, the Parties engaged in class-wide discovery including: (a) the exchange of Rule 26(a) disclosures; (b) the exchange of written interrogatories, including interrogatories to Named Plaintiff and Pre-Settlement Opt-In Plaintiffs; (c) the exchange of written discovery, including production of hundreds of pages of documents; and (d) the review of Defendant's written policies and procedures. Stephan Decl. ¶¶ 6, 11. This discovery was conducted in conjunction with a comprehensive investigation by counsel on the applicable law as applied to the facts discovered regarding the alleged claims and defenses.

On January 30, 2017, the Parties participated in an all-day mediation session overseen by a nationally recognized wage and hour mediator, Mr. Michael J. Leech, Esq. Stephan Decl. ¶ 7. As a result, the Parties reached an agreement on the settlement amount. *Id.* The Terms of the settlement have since been memorialized in the Settlement Agreement, fully executed on March 16, 2017. *Id.* On March 22, 2017, the Court granted preliminary approval of the Parties' proposed settlement, including preliminary approval "of the attorneys' fees, costs and settlement administration expenses payable to Class Counsel" ("Preliminary Approval Order"). (D.E. 25).

**B.** **Class Counsel and Plaintiff Agreed to a Reasonable Percentage of the Settlement Amount as Compensation for the Risks They Took in Prosecuting This Action and Notified Class Members of this Arrangement Through Class Notice.**

Class Counsel entered into a retainer with Named Plaintiff allowing Class Counsel to apply for a reasonable percentage of the recovery as a contingency fee payment, plus actual out of pocket expenses. Stephan Decl. ¶ 14. Consistent with this agreement, the Settlement Agreement provides that Class Counsel may apply for approximately 30% of the Gross Settlement Amount, or $97,200.00. ("Settlement Agreement") (D.E. 23-1). Class Members were notified of these terms, and the proposed separate award to Named Plaintiff, in the Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice"). (D.E. 23-1) (Notice Materials). The Class Notice

2

also informed class members of their right to object, and described the procedures for asserting such objections. *Id.* No Class Members objected to the settlement. Stephan Decl. ¶ 8; Ex. B, Affidavit of Kelly Kratz ("Kratz Aff.") ¶ 11.

## II.   ARGUMENT

### A.   An Award of Fees and Costs Is Mandatory Under the FLSA and IMWL.

As a threshold matter, prevailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to reasonable attorneys' fees and costs under the FLSA and IMWL. *See* 29 U.S.C. § 216(b) (the court "*shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of action.") (emphasis added); 820 ILCS §105/12(a) (comparable fee-shifting provision under Illinois wage law); *see also Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *Batt v. Micro Warehouse Inc.*, 241 F.3d 891, 893 (7th Cir. 2001) ("Under the FLSA, prevailing plaintiffs are entitled to reasonable attorneys' fees"); *Bankston v. State of Ill.*, 60 F.3d 1249, 1255 (7th Cir. 1995) ("[T]he FLSA 'directs' courts to award reasonable attorney's fees to victorious plaintiffs").[1] Accordingly, Plaintiffs are entitled to reimbursement of reasonable attorneys' fees and costs.

### B.   The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Seventh Circuit.

The Court should award attorneys' fees as a percentage of the total fund made available to the class. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of

---

[1]      The purpose of mandatory fee awards under the FLSA is to encourage Plaintiffs with meritorious wage and hour claims that would otherwise be "abandoned" to bring their claims with "competent counsel." *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009).

3

a common fund "entitles [counsel] to a share of that benefit as a fee"). The percentage of the fund method is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (internal quotation marks omitted) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *4 (N.D. Ill. June 20, 2014) (approving distribution of settlement proceeds on a *pro rata* basis amongst class members); *see also Boeing*, 444 U.S. at 478 ("spreading fees proportionately among those benefited by the suit").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (approving award of 30% of the settlement proceeds, plus expenses); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633-34 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys"); *Grok Lines Inc. v. Paschall Truck Lines, Inc.*, No. 14 C 08033, 2015 WL 5544504, at *22 (N.D. Ill. Sept. 18, 2015).[2]

---

[2]     The trend in other circuits is to use the percentage of the fund method as well. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("the trend in this Circuit is toward the percentage method"); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) (internal quotation marks omitted) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund") (citing *In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998)).

It is especially appropriate to use a common fund approach to the fee award in cases based on fee-shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *Florin*, 34 F.3d at 564 (same). Here, the settlement fund has been created in exchange for the release of Plaintiff's and Class Members' claims under the FLSA and the IMWL, both for damages and statutory attorneys' fees. *See* 29 U.S.C. § 216(b); 820 ILCS 105/12(a).

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. First, the percentage of the fund method promotes early resolution, and removes the incentive for plaintiff's lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (explaining that the percentage of fund method is desirable because if "class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves"). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437

(1983) (fee requests "should not result in a second major litigation")). Courts in this District routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making). As the Court of Appeals for the Second Circuit has stated, the "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citation omitted).

## C. The Market Price for Legal Services Supports Plaintiffs' Motion for Attorneys' Fees.

In awarding attorneys' fees, courts ultimately must "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The district court must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigating when the risk of loss still existed." *Sutton*, 504 F.3d at 692. District should recreate the market, considering "actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . ." *Williams v. Rohm & Hass Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011) (quoting *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005)).

6

1. **Class Counsel's Request for 30% of the Settlement Is at the Low-End Range of the Usual Rate of Compensation in the Northern District of Illinois.**

The attorneys' fees Class Counsel requests are based on the market in the Northern District of Illinois. *In re Synthroid*, 264 F.3d at 718 ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time"); *Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *4 (N.D. Ill. Dec. 23, 2016) (same).

Class Counsel are experienced and recognized for their expertise in litigating complex class actions, including wage and hour cases like this one, and are more than justified in seeking compensation in the form of 30% of any potential settlement (plus costs) for their efforts. *See* Stephan Decl. ¶¶ 3-5, 15, 22-24.

Before initiating this litigation, Class Counsel and Named Plaintiff agreed that Class Counsel would request a reasonable percentage of any future recovery. *Id.* ¶ 14 Therefore, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because Plaintiff contracted for Class Counsel to be compensated by the method Class Counsel now seek.

It was reasonable for Plaintiff to contract for a reasonable percentage of the settlement fund to be paid to Class Counsel. In the Northern District of Illinois, class action employment lawyers routinely contract to receive one-third or more of any potential class settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. Stephan Decl. ¶ 15.

The going rate in the market for legal fees in wage and hour class actions is greater than

the fee requested here. Courts regularly agree that "a counsel fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiff's lawyers in an FLSA action." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (N.D. Ind. 2010) (internal quotation marks omitted) (collecting cases); *see Briggs v. PNC Fin. Servs. Grp.*, No. 1:15-cv-10447, 2016 WL 7018566, at *3-4 (N.D. Ill. Nov. 29, 2016) (awarding attorneys' fees of one-third of a $6 million settlement fund in a FLSA class action); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016) (granting an award of one-third of the settlement, as reasonable in a FLSA collective action); *Arango v. Landry's, Inc.*, No. 12 C 9354, 2015 WL 5673878, at *3 (N.D. Ill. Aug. 27, 2015) (granting fee award of 30% of settlement in a hybrid FLSA collective action and state law class action); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (awarding attorneys' fees of one-third of the settlement fund in a hybrid FLSA collective action and state law class action); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (awarding 30% of the first $10 million of the settlement in Telephone Consumer Protection Act class action); *Campbell*, 2012 WL 1424417 at *2 (approving award of one-third settlement plus costs in FLSA collective action). These awards of "attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees [Class Counsel propose should be] awarded by the [Court]." *Taubenfeld*, 415 F.3d at 600.

Class Counsel's requested fee is also at the low-end range of the market rate for common fund class actions within the Northern District of Illinois. *See id.* (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *see also Castillo*, 2016 WL 7451626, at *4 (quoting *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL

17009594, at *7-8 (N.D. Ill. Oct. 10, 1995)) (awarding one-third of the settlement fund and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery").

### 2. The Risk of Nonpayment Was Significant.

Class Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Class Counsel faced. At the outset of the representation, Class Counsel took "on a significant degree of risk of nonpayment . . ." *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees); *Castillo,* 2016 WL 7451626, at *4 (same). Class Counsel took this case on a contingent basis, meaning that there was a substantial risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (same). As the Seventh Circuit has noted, Class Counsel "could have lost everything" they invested. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

Class Counsel also faced significant legal hurdles in proving liability and damages. On liability, Plaintiffs would have to overcome Defendants' defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendants' pay scheme fails to meet the salary or fee basis tests under the FLSA. Additionally, Plaintiffs had not yet obtained class certification. (D.E. 16). Thus, as in any complex action, the Plaintiffs generally faced uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of

litigation, such confidence is often misplaced."), *rev'd on other grounds*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730 (1977).

**D.** **Class Counsel's Requested Fee Award Is Fair and Reasonable.**

    **1.** **The Results and Benefits Conferred Upon the Class Justify the Fee Award.**

This settlement will provide the class with a substantial cash payment. The Settlement Agreement provides that Defendants will pay a Gross Settlement Amount of $310,057.61 to settle all claims against them. Kratz Aff. ¶ 13. This settlement that represents a significant value that averages to an award of $951.93 per Claiming Class Member and $156.51 per Non-Claiming Cass Member. Stephan Decl. ¶ 9. The settlement represents significant value given the attendant risks of litigating the merits of the case, and even though recovery might be greater if Plaintiffs succeeded on all claims at trial, survived any appeal, and were able to collect. Importantly, the settlement serves the purpose of the FLSA and IMWL by vindicating rights those statutes were enacted to protect.

The settlement also does not present any signs of collusion. It was reached after intense negotiation with the dedicated assistance and oversight of a well-respected nationally recognized wage and hour mediator, Mr. Michael J. Leech. Stephan Decl. ¶¶ 7, 12. All Claiming Class Members' awards will be calculated according to the same allocation formula, based upon each Claiming Class Members' potential unpaid overtime in proportion to all potential unpaid overtime of Claiming Class Members. (D.E. 23-1). All Non-Claiming Class Members will receive the lesser of the value of their potential unpaid overtime or $200.00. (D.E. 23-1).

    **2.** **Continued Litigation Presented a Significant Risk to the Class.**

Continued litigation would pose significant risks. While Plaintiffs believe they would prevail on their claims, Defendants asserted numerous defenses as to liability and damages. As

discussed in II.C.2, *supra*, if Plaintiffs continued to litigate, they would have to overcome Defendants' defense that Plaintiffs were exempt professional employees. Moreover, even if Plaintiffs prevailed on liability, there is no guarantee that the Court would endorse the damages calculation most favorable to Plaintiffs.

### 3. There Were No Objections to Class Counsel's Request for Fees.

Class Members had the opportunity object to Class Counsel's fees before the deadline for objections and the Final Approval Hearing on July 19, 2017. *See* Fed. R. Civ. P. 23(h). The Class Notice informed Class Members of the amount of attorneys' fees and costs requested. *See* D.E. 23-1 (Notice Materials). The Class Notice also informed Class Members that they may object to all or part of the settlement. *Id.* No Class Members objected to the settlement. Stephan Decl. ¶ 8; Kratz Aff. ¶ 11.

### E. Although Class Counsel's Fee Request Is Reasonably Based on the Market and Should Be Approved Without Cross-Checks, It Meets Both Cross-Checks Applied By Courts.

Class Counsel's fee request should be approved because it is reasonably based on the market rate. No further showing or analysis is needed. Courts in the Seventh Circuit have on occasion employed a lodestar cross-check for the reasonableness of fees, and Judge Posner has elucidated a further reasonableness "ratio" that should be analyzed in consumer cases where the value to the class is exceedingly low. However, it is not appropriate to employ either cross-check here because the recovery for Class Members is substantial and the settlement does not present any indicia that it was the product of collusion between the Parties at the expense of Class Members.

### 1. Although the Court Need Not Perform a Lodestar Cross-Check, Class Counsel's Lodestar Supports the Fee Request.

In the Seventh Circuit, courts are not required to perform lodestar cross-checks in common

fund settlements. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the percentage fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls." *In re Trans Union Corp. Privacy Litig.*, No. 00 Civ. 4729, 2009 WL 4799954, at *8 (N.D. Ill. Dec. 9, 2009).

The Seventh Circuit emphasizes that an attorneys' fees award "cannot be assessed in isolation from what it buys." 768 F.3d 622, 633 (7th Cir. 2014). "[I]n determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Id.* Further, one court held that the "use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 599 n.27 (N.D. Ill. 2011) (*quoting Will v. General Dynamics Corp.*, No. 06 Civ. 698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010)). Because Class Counsel's substantial work to date has "bought" a significant recovery for Class Members, the Court need not analyze Class Counsel's lodestar.[3]

Nonetheless, were the Court to evaluate Plaintiffs' lodestar, it would highlight the reasonableness of the award. To date, Class Counsel have incurred over $83,097.50 in attorneys'

---

[3]     Further illustrating that the lodestar is an ineffective benchmark for reasonableness, one district court rejected the lodestar cross-check presented in a plaintiff's motion for attorneys' fees *even while finding the fees in question were reasonable. See Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3-4 (N.D. Ill. June 20, 2014) (rejecting plaintiff's cross-check lodestar arguments as "absurd" but finding contingency rate reasonable because it was "well within the range of market prices").

fees and in excess $650.00 in costs. Stephan Decl. ¶¶ 21, 25. Class Counsel's rates are based on market rates and, therefore, are reasonable. *Id.* ¶¶ 17-20. To date, Class Counsel expended over 250 hours on this case. *Id.* ¶ 21. Further, Class Counsel will necessarily continue to spend time implementing the settlement by overseeing the distribution of the Settlement Fund. Should the Court look to the lodestar cross-check, these hours would establish the significant work that Class Counsel have invested and would confirm the reasonableness of the award. The Court should presume these hours were reasonably necessary to vigorously prosecute the case because Class Counsel contracted, and expected, to recover a percentage of the fund (if they recovered at all) and not their lodestar – and therefore had little incentive to expend unnecessary time and effort. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (stating that the percentage method "provides a powerful incentive for efficient prosecution and early resolution of litigation."). Put another way, Class Counsel was not seeking to pad a bill that they never expected to come due.

The fee that Class Counsel request is only 1.17 times their lodestar amount, Stephan Decl. ¶ 21, which is well within the range that courts accept when performing a crosscheck. *See Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y 2013) (granting approximately 6.3 multiplier); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of approximately 6.85 "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar).

### 2. Although the Court Need Not Use the "*Redman* Ratio Test" to Cross-Check the Settlement, Class Counsel's Fee Request Passes this Test.

In a series of three cases decided in 2014, the Seventh Circuit was faced with three low claims-rate consumer settlements ("the Consumer Cases") that were negotiated under questionable

circumstances and where only the parties and lawyers (not class members) were to benefit from the proposed settlement. *See Pearson v. NBTY*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014). In each of the Consumer Cases, the class recovery was miniscule, the claims process was designed to discourage class participation, the claims' rate was exceedingly low, and there were other indicia that class counsel had sold out the class to further class counsel's own pecuniary interests. As a result, based on the specific facts of *Eubanks* and *Redman*, the Seventh Circuit instructed the district courts to examine the ratio of the fee requested to the fee plus what class members received, as a cross-check, and as a deterrent to what the Seventh Circuit viewed as attorney-driven litigation (the "*Redman* Ratio test"). *See Redman*, 768 F.3d at 630; *accord Pearson*, 772 F.3d at 781. The settlement here, however, could hardly differ more from the settlements in the Consumer Cases. Because the value of this settlement to the Class is readily apparent, no further crosscheck is needed.

The instant high-value settlement is easily distinguishable from the Consumer Cases in four distinct ways. First, through this Settlement, Class Counsel have secured significant cash awards for Class Members. The Settlement Agreement provides each Class Member with an individualized cash payment. (D.E. 23-1) (Notice Materials). Class Counsel's calculations show that the average award for Claiming Class Members is approximately $951.93 and the average award for Non-Claiming Class Members is $156.51. Stephan Decl. ¶ 9. These payments represent the approximate value of the half-time rate owed to Class Members. *Id.* In sharp contrast, the settlements in the Consumer Cases brought little if any real value to their class members. *See Pearson*, 772 F.3d at 783-84 (the value of the actual recovery to the class was "7 cents apiece"); *Redman*, 768 F.3d at 628, 637 ("the value of the settlement to the class members is uncertain

14

because [the $10 RadioShack coupon] is not a cash settlement"); *Eubank*, 753 F.3d at 723, 725-26 (class members only received a "contingent" recovery).

Second, the claims process in *Pearson*, unlike the one here, also was structured to *prevent* class members from benefiting from the settlement: it was arduous, the parties could contest claims, and the language on the claim forms suggested that claimants could be prosecuted criminally. 772 F.3d at 782-83 (expressly stating that the claims process was structured "with an eye toward discouraging the filing of claims"). In *Eubank*, the notice of settlement was divided into 27 sections, some with numerous subsections. *See* 753 F.3d at 726. To receive benefits, class members had to satisfy nine separate criteria. *See id.* The claim forms were "so complicated that [defendant] could reject many of them on the ground that the claimant had not filled out the form completely and correctly." *Id.* Here, Class Counsel have negotiated a simple claims process, which requires no action to receive a portion of the settlement, as a Non-Claiming Class Member, and requires only contact information and a signature on an Opt-In form to be returned to the Settlement Administrator via email or first-class mail, postage prepaid. (D.E. 23-1) (Notice Materials).

Third, the 44.12% claims rate in this case exceeds the claims rates in the Consumer Cases by an order of magnitude. Kratz Aff. ¶ 12; Stephan Decl. ¶ 8. In the Consumer Cases, due to the small value that the settlement provided to the class members and the byzantine notices and claim forms, the claims rate was less than one percent. *See Eubank*, 753 F.3d at 726 (only 1,276 claims were filed out of more than 225,000 notices sent); *Redman*, 768 F.3d at 628 ("a little more than one half of one percent of the entire class" submitted claims); *Pearson*, 772 F.3d at 782 (the class contained approximately 12 million members, and only 30,245 submitted claims – "or one quarter of one percent").

Finally, faced with low settlement values, high requested attorneys' fees, difficult notices, and low claims rates, the Seventh Circuit questioned whether class counsel in the Consumer Cases had sold out their respective classes. For these reasons, this case is unlike the Consumer cases, and there is no need to use a further cross-check on the established value that Class Counsel have obtained on behalf of the Class. However, should the Court conclude that it is appropriate to perform a *Redman* Ratio cross-check, the settlement and Class counsel's fee request passes. In light of the Class Members' high claims rate, the ratio of the fee requested to the fee plus what class members received is approximately 1:3.2 ($97,200.00: $97,200.00 + $202,857.61), which equates to an effective contingent fee of 32%. Stephan Decl. ¶ 21. This ratio greatly exceeds the faulty 1:1.83 ratio (and 55% effective contingent fee) in *Redman*, and therefore meets the ratio cross-check. *Redman*, 768 F.3d at 630.

## F.    Class Counsel are Entitled to Reimbursement of Costs and Expenses.

As noted above, the award of costs, as well as fees, is mandatory under the FLSA and IMWL. *See* 29 U.S.C. § 216(b); 820 ILCS §105/12(a); *see also Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999) ("The FLSA directs courts to award reasonable attorneys' fees and costs to prevailing plaintiffs").[4]

Class Counsel has advanced litigation costs and expenses that normally would be charged to clients. *See* Stephan Decl. ¶¶ 13, 26. All of these costs and expenses were reasonably and necessarily incurred in the course of this litigation. *Id*. ¶¶ 23, 27. Therefore, Class Counsel request an award of costs and expenses to Class Counsel in the amount of $654.94.

---

[4]    In this context, "costs" include all costs and expenses that firms in the area normally charge to their clients, including travel and meal expenses, and consultant fees. *See Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997); *see also Joe Hand Promotions, Inc. v. Zani*, No. 11 C 4319, 2014 WL 958716, at *2 (N.D. Ill. Mar. 11, 2014).

**G.** **Named Plaintiff and the Deposed Opt-In Plaintiffs Should Be Awarded Service Payments for their Efforts in this Litigation.**

Courts may make separate awards to class representatives in recognition of their risks taken, time expended and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). The role of the Named Plaintiff in this litigation was crucial. Named Plaintiff sacrificed his time and his professional reputation as a young attorney to prosecute this lawsuit on behalf of his fellow current and former employees. He reviewed and approved the Complaint. He met, conferred and corresponded with Class Counsel on a regular basis. He submitted to extensive interviews, produced records and documents, located witnesses and provided invaluable information and assistance to Class Counsel without which they could not have brought this matter to a successful conclusion. He responded to written discovery and personally attended the one-day mediation. Additionally, he was actively involved in subsequent discussions that shaped and finalized the settlement and proposed plan of allocation.

Therefore, Class Counsel request a separate service payment of $10,000.00 to the Named Plaintiff in addition to any pro rata share of the Settlement Fund to which he is entitled. This amount comports with service payments recently awarded to Named Plaintiffs in combined state and federal wage actions. *See Castillo v. Noodles & Co.*, No. 16-cv-03036, 2016 WL 7451626, at *6-8 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service awards for each of four named plaintiffs in FLSA wage action); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); *see also Lukas v. Advocate,* No. 1:14-cv-2740, D.E. 150 (N.D. Ill. June 29, 2016) (approving $15,000 service award to named plaintiff in FLSA wage action); *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *19 (S.D.N.Y. Sept. 22, 2015) (approving $15,000 service payments for each of two named plaintiffs in state and federal wage

17

action); *Puglisi v. TD Bank, N.A.*, No. 13 CIV. 637 GRB, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving $15,000 service payments to two class representatives in combined Rule 23 class action and FLSA collective action); *see also 4 Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their Unopposed Petition for Approval of Attorneys' Fees, Reimbursement of Expenses, and Service Payments to Named Plaintiffs and enter the Proposed Order attached hereto as Exhibit C:

    a)    awarding Class Counsel attorneys' fees in the amount of $97,200.00; and

    b)    awarding service payments in the amount of $10,000.00 to Named Plaintiff, in addition to any pro rata share of the Settlement Fund to which he is entitled.

Dated: July 12, 2017              Respectfully Submitted,

                                 */s/ Ryan F. Stephan*
                                 Ryan F. Stephan
                                 Catherine T. Mitchell
                                 Haley R. Jenkins
                                 **STEPHAN ZOURAS, LLP**
                                 205 North Michigan Avenue
                                 Suite 2560
                                 Chicago, Illinois 60601
                                 312.233.1550
                                 312.233.1560 (fax)
                                 lawyers@stephanzouras.com

                                 **ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on July 12, 2017 I electronically filed the attached with

the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*s/ Ryan F. Stephan*